IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL BROYLES,<br><br>         Plaintiff,<br><br>   v.<br><br>JONATHAN GOULD, BOAZ GIANSON, NELSON PRICE, and CHRISTOPHER SIMMONS,<br><br>         Defendants. | Case No. 3:14-cv-00198-TMB<br><br>ORDER |

## I.  INTRODUCTION

Plaintiff Michael Broyles brought this action against several Anchorage Police Department ("APD") officers and State of Alaska Department of Corrections ("DOC") employees, alleging excessive force and unreasonable seizures in violation of his constitutional rights under 42 U.S.C. § 1983 and the torts of false arrest, false imprisonment, and excessive force under Alaska common law.[1,2] Broyles' lawsuit stems from his two October 2012 arrests

---

[1] Broyles' briefing does not clearly differentiate between his excessive force claims under federal law and his excessive force/battery claims under Alaska state law. For reasons of economy and clarity, the Court analyzes Broyles' excessive force claims as federal constitutional claims because the analysis is identical. *See Maness v. Daily*, 307 P.3d 894, 900–01 (Alaska 2013) ("The use of excessive force is a statutory violation under Alaska law and may also run afoul of the Fourth Amendment to the United States Constitution and article 1, section 14 of the Alaska Constitution, both of which grant citizens a right to be secure in their persons and protect against unreasonable searches and seizures.") (citation and quotations omitted); *see also Breck v. Ulmer*, 745 P.2d 66, 71 (Alaska 1987) (noting that Alaska "follow[s] federal precedent for determining whether qualified immunity should be conferred for [official acts] alleged to contravene a statutory or constitutional mandate") (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

[2] Dkt. 1.

1

and his subsequent incarcerations at the Anchorage Correctional Complex (the "Anchorage jail"). At [Dkt. No. 52](), Officers Jonathan Gould, Nelson Price, Boaz Gianson, and Christopher Simmons (collectively, the "APD Defendants"), now move for summary judgment on Broyles' claims against them.[3] Broyles opposes the motion at [Dkt. No. 71](). For the reasons discussed below, the APD Defendants' motion for summary judgment is **GRANTED**.

## II. BACKGROUND

The Court assumes the parties' familiarity with the facts of this case. To the extent additional facts are necessary to the disposition of the present motion, the Court draws those facts from the parties' affidavits and exhibits.

### A. Broyles' First Arrest

On the evening of Friday, October 19, 2012, APD dispatched officers, including Officer Gould, to Broyles' home located at 9499 Brayton Drive, Space 145 in response to several 911 calls and police reports from Broyles' friends and family indicating that he was suffering from a mental disturbance, engaging in dangerous and menacing behavior, and contemplating suicide.[4] The officers were directed to take Broyles into custody and to transport him to the nearby Providence Alaska Medical Center Psychiatric Emergency Room for a psychiatric evaluation pursuant to Alaska Stat. 47.30.705.[5]

---

[3] *See also* [Dkt. 53]() (Defs.' Mem. in Supp. of Mot. Summ. J.); [Dkt. 73]() (Defs.' Reply).

[4] Dkt. 53-1, at 1–9.

[5] [Dkt. 61 at 2](). Alaska Stat. 47.30.705 provides that "[a] peace officer . . . who has probable cause to believe that a person is gravely disabled or suffering from mental illness and is likely to cause serious harm to self or others . . . may cause the person to be taken into custody and delivered to the nearest evaluation facility."

Upon their arrival at Broyles' home, the officers made contact with Broyles, and Officer Gould attempted to take him into custody. However, when Officer Gould took hold of Broyles' hands, Broyles resisted, pushing away from Officer Gould and retreating into his home.[6] This short struggle damaged Officer Gould's radio earpiece.[7] The officers departed the area and obtained a warrant to arrest Broyles on charges of resisting arrest and malicious destruction of government property.[8]

The following morning, on October 20, 2012, APD dispatched officers to serve the warrant and arrest Broyles.[9] Broyles willingly exited his home and was placed in the back of a police cruiser by Officer Price without incident.[10] The arresting officers allege that Broyles appeared to have a mental disorder and stated that he wanted help.[11] Broyles claims that on the way to the Anchorage jail, Officer Price parked the police cruiser in a parking lot and beat him before putting him in leg restraints.[12] Broyles claims that in doing so, Officer Price and an unnamed APD officer punched him in the face, threw him to the pavement, kicked, and beat him.[13] The officers then transported Broyles to the Anchorage jail.[14]

---

[6] *Id.* at 3.

[7] *Id.*

[8] Dkt. 52, Ex. A at 1.

[9] Dkt. 53-3.

[10] *Id.*

[11] Dkt. 64 at 2.

[12] Dkt. 71-3 at 11.

[13] *Id.*

[14] Dkt. 52, Ex. A at 10–11.

### B. Broyles' Second Arrest

Broyles was released from jail on October 22, 2012 without money or a functioning cell phone and walked to a nearby convenience store located at a Chevron gas station.[15] Shortly thereafter, APD received a 911 call from the convenience store reporting a white male engaging in threatening behavior and refusing to leave the store when asked by Chevron employees.[16] The employee reported that the male, later identified as Broyles, was scaring customers, appeared to be "on something," and was "tweaking."[17]

Officers Simmons and Andrew Meier arrived at the Chevron station to find Broyles crouched on the floor of the convenience store.[18] Broyles was uncooperative with the officers' orders and refused to stand to be taken into custody.[19] Officers Simmons and Meier attempted to handcuff Broyles, and a struggle ensued as Broyles resisted arrest and attempted to fight the officers.[20] Officers Gianson and Shawn Davies arrived at the Chevron to assist in the arrest as Broyles continued fighting the officers.[21] After a struggle lasting approximately seven minutes, during which Broyles suffered numerous minor injuries, four officers arrested Broyles and

---

[15] Dkt. 17-2 at 6 (APD arrest report); Dkt. 1 at 8 ¶ 22.

[16] Dkt. 1 at 8, ¶ 23; Dkt. 17-1 at 18; Dkt. 17-2 at 6.

[17] Dkt. 52-1 at 14.

[18] Dkt. 66 at 3.

[19] Dkt. 52, Ex. F.

[20] *Id*.

[21] Dkt. 53 at 2; Dkt. 59 at 2.

4

placed him in total restraints.[22] Broyles was then transported to Alaska Regional Hospital where he was treated before being remanded to the Anchorage jail.[23]

### C. Procedural History

On October 10, 2014, Broyles sued under 42 U.S.C. § 1983 and Alaska common law, alleging unreasonable seizures and excessive force in violation of the Fourth Amendment, false arrest, and false imprisonment by Officers Gould, Price, Gianson, Simmons, and a John Doe APD officer.[24] Broyles also sued Debbie Miller, a DOC official, and a Jane Doe DOC official for injuries suffered during his time in jail. Miller was subsequently dismissed from this lawsuit.[25]

Broyles' complaint brings four causes of action against the APD Defendants, which can be summarized as follows:

> (1) An unreasonable seizure in violation of the Fourth Amendment, and false arrest and false imprisonment in violation of Alaska common law against Officers Gould, Price, and a John Doe APD officer for the first arrest on October 20, 2012.[26]
>
> (2) Excessive force in violation of the Fourth Amendment and Alaska Stat. 12.25.070 against Officer Price for allegedly beating him while transporting him to the Anchorage jail after the first arrest on October 20, 2012.[27]

---

[22] Dkt. 52, Ex. F.

[23] Dkt. 54 at 2.

[24] Dkt. 1.

[25] Dkt. 31.

[26] Dkt. 1 at ¶ 7.

[27] *Id*. at ¶ 10.

5

(3) An unreasonable seizure in violation of the Fourth Amendment, and false arrest and false imprisonment in violation of Alaska common law against Officers Gianson and Simmons for the second arrest on October 22, 2012.[28]

(4) Excessive force in violation of the Fourth Amendment and Alaska Stat. 12.25.070 against Officers Gianson and Simmons for injuries Broyles sustained during the second arrest on October 22, 2012.[29]

Broyles claims that as a result of the APD Defendants' alleged use of excessive force, he has suffered a permanent deforming injury to his finger which prevents him from obtaining employment, and numerous other physical and mental injuries from his imprisonment.[30] Broyles further claims that he has incurred and will continue to incur extensive medical expenses to treat those injuries and requests $50,000,000 in compensatory damages and $100,000,000 in punitive damages.[31] The APD Defendants have now moved for summary judgment on all of Broyles' claims against them.[32]

### III.  LEGAL STANDARD

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party,[33] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] A dispute about a

---

[28] *Id.* at ¶ 24.

[29] *Id.* at ¶ 25.

[30] *Id.* at ¶ 26.

[31] *Id.* at 10.

[32] Dkt. 52.

[33] *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1129 (9th Cir. 2011) (citation omitted).

[34] Fed. R. Civ. P. 56(a).

material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[35] "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the same evidence were to be uncontroverted at trial."[36] When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden "by showing . . . that there is an absence of evidence to support the nonmoving party's case."[37] The non-moving party must then "respond . . . by setting out specific facts showing a genuine issue for trial."[38] The trial court must accordingly determine whether there is sufficient evidence supporting the alleged factual dispute to require the trier of fact "to resolve the parties' differing versions of the truth at trial."[39]

## IV. DISCUSSION

The APD Defendants claim that they are entitled to qualified immunity for any constitutional violations under the Supreme Court's test in *Saucier v. Katz*,[40] and to immunity for any tortious violations of Alaska's common law under Alaska Stat. 9.65.070(d)(2).[41] In support

---

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[36] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986).

[38] *Id.* at 324.

[39] *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted).

[40] 533 U.S. 194, 201 (2001).

[41] Dkt. 53 at 3.

7

of their motion, the APD Defendants filed numerous affidavits,[42] an audio recording of Broyles' first arrest and transport to jail captured by Officer Price's uniform-mounted audio recording device,[43] an audio recording of Broyles' second arrest captured by Officer Simmons' uniform-mounted audio recording device,[44] and a video recording of Broyles' second arrest captured by a Chevron gas station security camera.[45]

Along with his response in opposition, Broyles filed affidavits generally describing his peaceful character and reiterating his alleged mistreatment at the hands of the APD Defendants.[46]

### A. 42 U.S.C. § 1983 and Qualified Immunity

Broyles brings the majority of his claims under 42 U.S.C. § 1983. Section 1983 creates a private right of action for those plaintiff's seeking to redress and remedy constitutional wrongs caused by those acting "under the color of state law."[47] Thus, "[t]o state a claim under § 1983 a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."[48]

---

[42] Dkts. 54–68.

[43] Dkt. 52, Ex. C.

[44] Dkt. 52, Ex. D.

[45] Dkt. 52, Ex. F.

[46] Dkt. 71-3, 71-4.

[47] 42 U.S.C. § 1983.

[48] *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citation omitted).

Qualified immunity is an affirmative defense available to § 1983 defendants who can show that they acted with a reasonable belief in the constitutionality of their challenged conduct.[49] Under the Supreme Court's test for qualified immunity articulated in *Saucier v. Katz*, a reviewing court must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[50] If no constitutional right was violated, the defendant is entitled to qualified immunity.[51] If a constitutional right was violated, then the court must determine whether the right was "clearly established."[52] The Supreme Court has since held that a reviewing court may "exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[53]

In the present case, the APD Defendants concede that they were acting under color of state law while arresting and transporting Broyles. Therefore, the Court need only determine if there is sufficient evidence to support Broyles' claim that the APD Defendants violated Broyles' constitutional rights and/or whether that right was clearly established.

---

[49] *Saucier*, 533 U.S. at 201.

[50] *Id*.

[51] *Id*.

[52] *Id*.

[53] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *accord Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014).

## B. Claim 1 – Broyles' First Arrest

Broyles' first claim, against Gould and Price, relates to his first arrest on October 20, 2012.[54] Essentially, Broyles claims that Gould and Price never had probable cause to arrest him, and that they therefore violated his Fourth Amendment right against unreasonable seizures and committed the common law torts of false arrest and false imprisonment when they arrested him on October 20.

In their motion for summary judgment, the APD Defendants note that Broyles' first arrest took place pursuant to a facially valid arrest warrant based on probable cause.[55] Broyles, however, claims that because Officers Gould and Price did not follow the procedures of Alaska Stat. 47.30.705—for example, by not transporting him to the nearest psychiatric facility for evaluation—the arrest was unlawful.[56]

As to Broyles' constitutional claim, "by virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty," such as an arrest.[57] "Whatever procedure a State may adopt, it must provide a fair and reliable

---

[54] Dkt. 1 at ¶ 7

[55] Dkt. 52, Ex. B at 1.

[56] Dkt. 71 at 18.

[57] *Baker v. McCollan*, 443 U.S. 137 142–143 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."[58]

Broyles' false arrest and imprisonment claims are governed by a similar rule—whether the arrest was made with proper legal authority.[59] "False arrest and false imprisonment are not separate torts. A false arrest is one way to commit false imprisonment; since an arrest involves restraint, it always involves imprisonment."[60] Under Alaska law, "the elements of the false arrest-imprisonment tort are (1) a restraint upon the plaintiff's freedom, (2) without proper legal authority."[61]

Contrary to his argument, Broyles was not actually arrested pursuant to Alaska Stat. 47.30.705 on October 19, 2012. Broyles' first arrest occurred the following day, on October 20, and was effectuated pursuant to a facially-valid arrest warrant supported by a magistrate's finding of probable cause.[62] The Court concludes as a matter of law that Broyles' first arrest was lawfully executed and finds no constitutional or state tort violation. Accordingly, the Court **GRANTS** the APD Defendants' motion for summary judgment with respect to Broyles' first claim. Broyles' first claim is **DISMISSED WITH PREJUDICE**.

---

[58] *Gerstein*, 420 U.S. at 125; *see also Steagald v. U.S.*, 451 U.S. 204, 212 (1981) ("The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest and conduct a search.").

[59] *City of Nome v. Ailak*, 570 P.2d 162, 168 (Alaska 1977).

[60] *Id.*

[61] *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 345 (Alaska 1996) (citing *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 461 (Alaska 1986)).

[62] Dkt. 52, Ex. B at 1.

11

### C. Claim 2 – The Transport of Broyles to the Anchorage Jail

Broyles' second claim alleges excessive force by Office Price and an unnamed APD officer. Broyles claims that after arresting him on October 20, 2012, Price and the unnamed APD officer parked the police cruiser and beat him during the transport to the Anchorage jail. Broyles describes the alleged beating in his affidavit, stating:

> Officer Price pulled into a parking lot. He came to my door and punched me in the face without saying a word. I was then tossed to the pavement unable to break the fall with my arms. Suddenly, two police officers were on me pushing and shoving and kicking while I was on the pavement. Then the leg restraints were placed on me by two officers.[63]

Broyles states further, "I shouted in protest to what had happened to me as Officer Price was driving. I protested even louder once I discovered our true destination was the Anchorage jail as we arrived."

For the application of force during arrest or detention to be considered "excessive," it must be so unreasonable as to constitute a deprivation of the individual's right under the Fourth Amendment to be free from "unreasonable searches and seizures."[64] A reviewing Court must determine whether the officer's actions were objectively reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allowing "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[65]

---

[63] Dkt. 71-3 at 11.

[64] *Graham v. Connor*, 490 U.S. 386, 391 (1989).

[65] *Id*.

As the Alaska Supreme Court has noted, "[t]he standard for excessive force in Alaska is nearly identical" to the federal rule.[66] Alaska Stat. 12.25.070 provides that "[a] peace officer or private person may not subject a person to greater restraint than is necessary and proper for the arrest and detention of the person." Alaska Stat. 11.81.370(a) provides in part that a peace officer "may use nondeadly force and may threaten to use deadly force when and to the extent the officer reasonably believe is it necessary to make an arrest, to terminate an escape or attempted escape from custody, or to make a lawful stop."

In their motion for summary judgment, the APD Defendants refute Broyles' claim, stating that though they placed leg restraints on Broyles to keep his hands behind his back during transport, no beating ever took place.[67] They submit an audio recording of the October 20, 2012 arrest and transport of Broyles taken by a recording device mounted on Officer Price's uniform in support of their argument.[68]

"The first step in assessing the constitutionality of [a police officer's] actions is to determine the relevant facts."[69] When the plaintiff's version of events differs substantially from the defendant's, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion."[70]

---

[66] *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011).

[67] Dkt. 53 at 13.

[68] Dkt. 52, Ex. C.

[69] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[70] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

13

Officer Price's audio recording of Broyles' arrest and transport belies Broyles' claim that he was beaten while being transported to the Anchorage jail on October 20. The audio recording, which is roughly 51 minutes long, begins with police knocking at the door of Broyles' house to take him into custody.[71] The APD officers explain to Broyles that they are taking him to "get him some help."[72] Broyles is verbally cooperative throughout and agrees to be handcuffed and placed into the back of the police cruiser.[73] At one point, Broyles is heard asking to be handcuffed with his hands in front of his body, but the officers explain that it is APD policy to transport arrestees with their hands handcuffed behind their backs.[74] Broyles then verbally agrees to be placed in the rear seat of the cruiser with his hands handcuffed behind his back.[75]

During the drive to the Anchorage jail, Broyles—still handcuffed with his hands behind his back—adjusted his position to relieve pressure on his right hand because he previously injured it by punching a wall in his home.[76] Broyles writes in his affidavit, "[w]ith my arms locked behind my back, the pain in my injured right hand was tremendous. So, I adjusted the handcuffs downward to beneath my upper thighs."[77] Officer Price can be heard

---

[71] Dkt. 52, Ex. C.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] Dkt. 71-3 at 7.

[77] *Id.* at 11.

14

on the recording repeatedly warning Broyles to stop adjusting his position.[78] After several warnings Price explains to Broyles, "[y]our hands have to be behind your back. "If you can't work with me on that, then . . . I have to make sure your hands stay behind your back."[79] The officers again repeatedly warn Broyles to stop reaching down to his feet in an effort to move his hands from behind his back.[80] The officers then can be heard pulling Broyles out of the vehicle and instructing him to cooperate with their commands as they place him in leg restraints. After securing Broyles' legs, the officers then instruct him to sit in the police cruiser for transport to the Anchorage jail.[81]

After the application of leg restraints—and during the remainder of the drive—Officer Price and Broyles engage in casual conversation.[82] Though Broyles responds incoherently at times, at no point does he voice any sign of distress or discomfort with his treatment by the officers, and he indicates no surprise upon arrival at the Anchorage jail.[83]

Having reviewed Officer Price's audio recording, the Court concludes that Officer Price acted reasonably and did not apply greater force than necessary during the transport of Broyles on October 20, 2012. While Broyles was clearly unwilling or unable to converse normally with the officers or to respond to basic commands, he showed no signs of the distress indicative of

---

[78] Dkt. 52, Ex. C.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] Dkt. 53, Ex. C.

the type of violent treatment alleged in his complaint and affidavit. Moreover, Broyles provides the Court with no evidence to buttress his claims that Officer Price, or any of the other arresting officers, beat him during his first arrest or transport. Accordingly, the Court finds no constitutional or state tort violation and **GRANTS** summary judgment in favor of the APD Defendants on Broyles' second claim. Broyles second claim is **DISMISSED WITH PREJUDICE**.

### D. Claim 3 – Broyles' Second Arrest

Like his claim involving his first arrest, Broyles' asserts that his second arrest was in violation of his Fourth Amendment rights and constitutes the torts of false arrest and imprisonment because it was not lawfully based on probable cause. Broyles claims that he walked to the Chevron station after leaving the Anchorage jail hoping "to borrow a cup of coffee and a phone call."[84] Broyles concedes that he "must have been very creepy to look at," after his release from jail, and states, "I was not in my right mind. I just went in the back of the store and slumped against a cooler."[85] Nevertheless, Broyles does not believe that Officers Simmons and Gianson had probable cause to arrest him.

In their motion for summary judgment, the APD Defendants claim that (1) they had authority to detain Broyles for a mental evaluation under Alaska Stat. 47.30.705, and (2) the arresting officers had probable cause because they observed Broyles commit the crime of criminal trespass.[86]

---

[84] Dkt. 71-3 at 14.

[85] *Id*. at 15.

[86] Dkt. 53 at 14.

16

The Court need not decide whether the APD Defendants acted properly under Alaska Stat. 47.30.705, because the Court finds that the officers had probable cause to arrest Broyles at the Chevron station convenience store for criminal trespass. When a private property owner or employee of a business has requested a person leave that business' premises and that person fails to comply, he commits a criminal trespass.[87] "In seeking to establish probable cause, 'officers may not solely rely on the claim of a citizen witness . . ., but must independently investigate the basis of the witness' knowledge or interview other witnesses.'"[88] A police officer observing a person commit a crime has probable cause to arrest that person.[89]

In this case, video from the convenience store security cameras show Chevron employees asking Broyles to leave the store, and him not complying with those requests. When Officers Simmons and Meier arrived at the Chevron station, they found Broyles lying on the floor of the convenience store. Officer Simmons' audio recording from the encounter show that when the officers instructed Broyles to stand up and leave the store, he refused or was unable to comply with their order.[90] In doing so, he committed the crime of criminal trespass. The Court finds that, as a matter of law, the officers had probable cause to arrest Broyles. Accordingly, the Court

---

[87] Alaska Stat. 11.46.320(a)(1); *see also* Anchorage Muni. Code 8.45.010(A)(2) ("A person commits the crime of criminal trespass if the person . . . knowingly enters or remains on private business or commercial property . . . after the person has been requested to leave by someone with apparent authority to do so.").

[88] *U.S. v. Struckman*, 603 F.3d 731, 742 (9th Cir. 2010) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).

[89] *See Edgerly v. City and Cty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest.").

[90] Dkt. 52, Ex F.

17

**GRANTS** summary judgment in favor of the APD Defendants on Broyles' third claim. His third claim is **DISMISSED WITH PREJUDICE**.

### E. Claim 4 – Excessive Force During Broyles' Second Arrest

Broyles claims that Officers Gianson, Simmons, and other unnamed APD officers used excessive force in arresting him at the Chevron station convenience store. He provides the Court with several pictures of injuries[91] sustained during the arrest, and an affidavit describing his ordeal in detail.[92] At issue, however, is not whether the APD defendants caused Broyles' injuries, but rather whether the force employed by the officers in effectuating the arrest was excessive "under objective standards of reasonableness."[93]

Like Officer Price's audio recording from Broyles' first arrest, the video from Chevron's security cameras paints a very different picture from Broyles' account. In the video, Broyles can be seen fighting the officers as they attempted to secure him with handcuffs.[94] At one point, with a handcuff around one wrist, Broyles kicked the officers off of him and held his shoe as a weapon.[95] As Officers Davies and Gianson secured Broyles' arm, Officer Gianson claims that he observed Broyles attempting to bite Davies and twice punched Broyles in the face.[96]

---

[91] Dkt. 71-1.

[92] Dkt. 71-2.

[93] *Saucier*, 533 U.S. at 201.

[94] Dkt. 52, Ex. F.

[95] *Id*.

[96] Dkt. 59 at 3.

Officer Simmons' audio recording is also illustrative. It confirms that the officers repeatedly gave Broyles verbal warnings to stop resisting and that his further non-cooperation would result in them employing taser shocks. Officer Simmons can be heard telling Broyles to "stop resisting and roll over, or you're gonna get tased."[97] Various officers can be heard repeating this warning nearly a dozen times before deploying a taser.[98] Officer Simmons then administered multiple taser shocks to Broyles,[99] which, according to Officer Gianson, were ineffective.[100]

The Chevron video recording shows that it indeed took four officers to subdue and arrest Broyles.[101] The struggle on the convenience store floor lasted over seven minutes, ending with four officers placing Broyles in total restraints.[102] During the arrest, Broyles can be heard urging officers to kill him.[103]

After reviewing the audio and video evidence provided by the APD Defendants, in conjunction with the parties' affidavits, the Court finds that "there is an absence of evidence to support [the plaintiff's] case."[104] Even viewing the evidence in the light most favorable to

---

[97] Dkt. 52, Ex. D.

[98] *Id.*

[99] *Id.*

[100] Dkt. 59 at 3.

[101] Dkt. 52, Ex. F.

[102] Dkt. 52-1 at 14.

[103] *See* Dkt. 52, Ex. D. At various times, Broyles asked the officers to "kill me," "chop my head off," and "want a bullet."

[104] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986).

19

Broyles and drawing all reasonable inferences in his favor, the Court finds that no reasonable jury could find for Broyles' position that he was subjected to unreasonably excessive force during his second arrest on October 22, 2012. Though Broyles clearly suffered injuries during the arrest, those injuries appear to be a direct result of his combative actions and refusal or inability to follow the arresting officers' most basic commands. Those injuries were not, as claimed by Broyles, the result of the application of unreasonable force. On the contrary, during the struggle to arrest Broyles, the arresting officers exercised appropriate restraint and escalated their use of force in a methodical manner. That is, they used reasonable force under the circumstances. Accordingly, the Court **GRANTS** summary judgment in favor of the APD Defendants on Broyles' last remaining claim. Broyles' fourth remaining claim is **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For the reasons discussed above, the APD Defendants' motion for summary judgment at [Dkt. No. 52](Dkt. No. 52) is **GRANTED**. The Court finds that there are no disputed material facts and that, as a matter of law, the APD Defendants committed no constitutional violations and/or torts against Broyles during his first or second arrest. The APD Defendants are therefore entitled to qualified immunity.

Officers Gould, Gianson, Price, and Simmons are dismissed as defendants from this case and Broyles' claims against them are **DISMISSED WITH PREJUDICE**. Because there are no remaining defendants, Broyles' case is hereby **DISMISSED**.

Dated at Anchorage, Alaska, this 15th day of September, 2016.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE